liAMY, Judge.
The plaintiffs in this matter filed suit in order to recover for damages stemming from an August 1989 automobile accident. The plaintiffs allege that the various defendant state agencies are liable for these damages because the driver of the vehicle in which the plaintiffs were injured was a minor and, according to the plaintiffs’ argument, should have been in the State’s custody and, therefore, under the State’s control. The plaintiffs maintain that, but for the State’s inadequate control or supervision of the minor driver, the accident would not have occurred. The trial court found that the State was hable pursuant to a negligence theory of recovery. The State now appeals.
Facts and Procedural History
The record in this matter indicates that an automobile accident occurred on the night of August 18,1989 in St. Landry Parish, Louisiana. The driver of the single-car ^involved in the accident was Andrew Joseph Oubre (A.J.), who was sixteen years of age at the time of the accident. The evidence and testimony presented in the lower court reveals that A. J. had a troubled past and, previous to the accident, had been in the custody of the Office of Community Services (State). However, despite the State’s various placements of A.J. and repeated attempts at treatment, A.J. continued to run away from these State placements and did so for a final time in February 1989.
During this final period, at which time A. J. was on runaway status, the State petitioned the court for an order releasing A. J. from the State’s custody and care. The court exercising jurisdiction over the juvenile matter granted the requested release on March 16, 1989. As previously stated, the accident at issue occurred in August, several months after the court-ordered release. According to testimony given at the trial, A.J. was living *525 with Blaine Bertrand, a deputy with the St. Landry Sheriffs Department, at the time of the accident.
On the night of August 18, 1989, A.J. was driving Bertrand’s vehicle, and according to the record, picked up a friend, Scott Leger, so that the boys might spend the night driving around the area in the vehicle. Later that evening, they picked up Conrad Moran and Joey Leger and continued to ride around. At trial, Moran testified that A.J. began driving at a high rate of speed and that the accident occurred after A.J. lost control of the vehicle. The occupants were thrown from the vehicle and were injured.
Following the accident, Moran filed suit as did Becky Daigle, who filed individually and on behalf of her son, Scott Leger, in order to recover for the injuries ^received from the automobile accident. The plaintiffs filed suit against A.J. Oubre,[1] Blaine Bertrand, Bertrand’s insurer,[2] and the State of Louisiana (State) through the Department of Health and Human Services, Office of Community Services and Carol Sorich,[3] a director with the Office of Community Services. In their petition, the plaintiffs alleged that the State was liable for A.J.’s negligence as he was an unemaneipated minor and, further, for their negligent supervision of A.J. In particular, the plaintiffs alleged as follows:
Upon information and belief it is alleged that when the defendants, State and Carol Sorich, sought a release of custody of defendant, Andrew Joseph Oubre, said defendants did not make provisions for the minor, Andrew Joseph Oubre, to be placed under the custody and control of anyone. Futhermore [sic], upon information and belief, it is alleged that the State and/or Carol Sorich did not have defendant A.J. Oubre emancipated and therefore said defendants are still legally responsible for the minor defendant, A.J. Oubre’s actions,
The defendants, State and Carol Sorich, through the above mentioned release of custody, turned the minor defendant, Andrew Joseph Oubre, loose to reap whatever havick [sic] he desired on innocent citizens of this State.
|4[I]t is alleged that the defendants, State and Carol Sorich, knew or should have known that the minor defendant, Andrew Joseph Oubre, suffered from such serious behavioral problems, that his release would surely result in his (Andrew Joseph Oubre) actions harming naive persons, such as your plaintiffs.
Following a two-day trial, at which time only the issue of liability was addressed, the trial judge ruled in favor of the plaintiffs finding that “the sole and proximate cause of the accident of August 18, 1989, was the careless operation of the Bertrand vehicle by AJ. Oubre.” Concluding that A.J.’s use of the vehicle was permissive, he found that “LIGA ... responsible for plaintiffs’ damages, if any, up to the limits of the policy issued by Liberty Lloyds Insurance Company.”[4] Furthermore, the trial judge found that the State had negligently pursued the court-ordered release of A.J. from their care and custody and, accordingly, imposed liability pursuant to this finding of negligence.
The State appeals, assigning the following as error:
A. The trial court erred by finding that there is little or no jurisprudence available which addresses the State’s liability or lack of liability.
*526 B. The trial court erred by inferring that OCS owed a duty to the plaintiffs.
C. The trial court erred by inferring that the plaintiffs’ risk of harm was within the scope of protection afforded to the plaintiffs.
D. The trial court erred by inferring that the act of securing A.J.’s release (from OCS custody) was a cause-in-fact (substantial contributing factor) in precipitating the plaintiffs’ injuries.
IsE. The trial court erred by concluding that discretionary immunity is inapplicable in this case.
F. The trial court erred in admitting A.J.’s juvenile records into evidence.
Discussion

Confidentiality of the State’s Records

We first address the State’s assertion that the trial court erred in finding that A.J.’s juvenile records were admissible. They assert, as they did at trial, that La.R.S. 46:56 requires that juvenile records remain confidential and that their use is precluded for a purpose not connected with the administration of the Department of Social Services.
In concluding that the juvenile records relating to A. J. should remain under the court’s seal, but were otherwise admissible, the trial court stated the following in overruling the State’s objection:
In this connection, the Court is going to overrule the objection of the State and is going to allow plaintiffs counsel free access to the documents and to the utilization of same in the trial of this matter. I don’t know that I can necessarily, for the record, state all of my reasons’ at this time for that, but at least so the record will reflect what my thinking is, I do wish to make what I’m going to call a semi-ruling on this at this time. It’s obvious to me that the reasons for the statute is of a protective nature, that the idea is to protect the juvenile from perhaps his misdeeds of the past, so as to enable the juvenile to become a productive citizen within our society. It appears to nié that the jurisprudence and the legislation does create some discretion on the part of the Court relative to the utilization of these, in that it would appear as though when there is good cause-shown, the Court can allow them to be utilized in subsequent investigations and proceedings. In this case, the Court is satisfied that good cause is shown in that this is about the only way that the plaintiff can have any hope at all of being able to try to establish its theory of the case, but that, in and of itself, is not the only reason why I am ruling in favor of the plaintiff in this regards. The other reason, which is integrally involved is the fact that I think that the ^reason for the confidentiality has disappeared from this case, in that we now have a juvenile who is deceased. Therefore, theoretically there’s nothing to protect him from. Unfortunately this child met with some mysterious death in 1994 I think it was, and so accordingly the Court does not find that there would be any harm to the minor by the release or by allowing the plaintiff to utilize the information contained in these records. The Court also notes that in connection with these matters that there are other deaths that create problems for the plaintiff in terms of proving its case without these, and those problems being that almost everybody concerned with this case is either dead or nobody knows where they are.... So for these reasons the Court is going to allow the plaintiff to utilize the information contained in Plaintiff’s Exhibit 1 and 2....
La.R.S. 46:56 requires that, generally, client records of the Department of Health and Hospitals be kept in confidence. This rather extensive and specific statute provides, in part, as follows:
A. Applications for assistance and information contained in case records of clients of the Department of Health and Hospitals, the Department of Social Services, or the Office of Elderly Affairs, for the purpose of adult protective services, shall be confidential and, except as otherwise provided, it shall be unlawful for any person to solicit, disclose, receive, make use of, or to authorize, knowingly permit, participate in, or acquiesce in the use of applications or client ease records or the *527 information contained therein for any purpose not directly connected with the administration of the programs of the department. .
(Emphasis added).
This seemingly comprehensive language, as well as that of the remaining subpara-graphs of La.R.S. 46:56, appears to preclude disclosure of juvenile files in all but the most narrow of circumstances. However, a possible exception to the general rule of confidentiality is contained within La.R.S. 46:56(H) which provides:
(1)Information pertaining to foster care of children, reports and investigations on abuse or neglect of children, and records of other child welfare services administered by'the department, including but not limited to handicapped children’s services, nutrition, immunization, and other medical and public health services records pertaining to children |7and where such records are in the custody of parish health units or regional and central offices of the office of public health of the Department of Health and Hospitals, shall not be subject to discovery or subpoena in any civil suit in which the department is not a party.
(Emphasis added).
Although it does so inversely, this language seems to allow for a possibility that would contradict the comprehensive protective nature of the statute and indicate that, in civil suits in which the State is made a defendant, the otherwise confidential records may be discovered. Due to the language of La. R.S. 46:56(H)(1) and in the absence of any jurisprudence to the contrary, we are unable to find that the trial court was clearly wrong or abused its discretion in allowing plaintiffs’ use of the juvenile records in question. Furthermore, the records available for the plaintiffs’ use were sealed by the court and any questioning pertaining to these records was done in a closed courtroom. Considering these protective measures, we find no clear error.

Negligence

[5]

The State maintains that no duty was owed to the plaintiffs in this matter. Rather, the State argues that the only duty that could have existed toward the plaintiffs was one of reasonable supervision and that this duty could only have existed if A.J. had been in the State’s custody. Of course, the State points out that the March 16, 1989 court-ordered release terminated the State’s custody and control of A.J. Furthermore, the State argues that even if A.J. had not been released from custody by the court, he would have been on runaway status and any duty toward the plaintiffs would nbt have extended to the type of situation presented in the instant Ismatter. As stated in brief by the plaintiffs:' “The scope of [the State’s] duty ... toward the plaintiffs did not encompass the risk that A.J. would obtain an automobile, drive the car, pick up the plaintiffs with the plaintiffs’ consent, drive recklessly, lose control of the ear, and injure the plaintiffs.”
In considering a negligence theory of recovery under La.Civ.Code art. 2315,[6] the Louisiana Supreme Court has previously stated that the relevant inquiries are: '
. (1) Was the conduct of which the plaintiff . complains a cause-in-faet of the resulting harm?
(2) What, if any, duties were owed by the respective parties?
(3) Whether the requisite duties were breached?
(4) Was the risk, and harm caused, within the scope of protection afforded by the duty breached?
(5) Were actual damages sustained?
Pitre v. Louisiana Tech Univ., 95-1466, 95-1487, p. 8 (La.5/10/96); 673 So.2d 585, 589-90 (quoting Socorro v. City of New Orleans, 579 *528 So.2d 931 (La.1991)) cert. denied, — U.S. -, 117 S.Ct. 509, 136 L.Ed.2d 399 (1996). See also Hebert v. Southwest Louisiana Elec. Mem. Corp., 95-405 (La.App. 3 Cir. 12/27/95); 667 So.2d 1148, (citing Theriot v. Lasseigne, 93-2661 (La.7/5/94); 640 So.2d 1305), writs denied, 96-0277 (La.5/17/96); 673 So.2d 607, 96-0798 (La.5/17/96); 673 So.2d 608.
LEach of the above-listed factors must be proven by the plaintiff, and failure to prove any single element defeats his or her ability to recover. Pitre, 95-1466, 95-1487; 673 So.2d 585. Furthermore, the determination of whether a duty exists is a question of law and the subsequent determination of whether a breach of that duty exists or does not exist is a factual question. Mundy v. Dep’t. of Health and Human Resources, 620 So.2d 811 (La.1993); Faucheaux v. Terrebonne Consol. Gov’t, 615 So.2d 289 (La.1993).
In concluding that the State was liable for their negligence, the trial court wrote as follows in its reasons for ruling:
There is little or no jurisprudence available to the Court in addressing the issue relating to the state liability or lack of liability in this case. The Court has carefully reviewed the state’s argument on their issue as well as the provisions of La.C.C. 2317[7] & 2318 [8] & LSA-R.S. |ki9:2798.1 and the several cases relied upon and the court rejects same. The Court is satisfied that the state sought its release of custody of A.J. from Judge Feueht, while he was on runaway status, solely and only because it was in the “State’s best interest” and not because it was in the child’s best interest — how could the state even know what was in the child’s best interest since they had not even seen him for several weeks, i.e., since he ran away from K Bar B on February 24,1989. The state could have and should have brought in A. J. and charged him with juvenile delinquency. They knew he was out of control and yet failed to place him in a restrictive environment. Had they done so, none of this would have happened and this case would not be before the Court.
The Court can appreciate the fact that the personnel that worked with this young man made a “gallant attempt” at working this case, but once they realized that they had nothing more to offer him because of his obvious lack of cooperation, it was not appropriate for them to throw up their hands and surrender by placing him back into society. OCS knew or should have known that it was not in the child’s best interest, nor was it in the best interest of society. The state must be held accountable for its aetions/inactions and the Court finds it liable for plaintiff’s damages, if any.
The Court further concludes that the state cannot find solace in the provisions of L.S.A. — R.S. 9:2798.1,[9] in that the Court *529 finds Section C thereof to be applicable and controlling.
Finally, the Court concludes that it will not apply the state’s argument relative to the finality of the City Court Judgment of March | n!9, 1989, which- terminated A.J.’s custody and supposedly the state’s obligations/liability. To do so would be to allow the state to reap the rewards of its misdeeds. That Judgment contains “er- ■ rors patent” in that OCS is responsible for acting in the best interest of a child and that interest is not served when it terminates its custody of an unrepresented runaway with the troubled history of A.J. Oubre.
The record indicates that A.J. had, for some time, been out of the custody and control of the State. According to the testimony of employees with the Office of Community Services, he would periodically disappear from the various placements which were made by the State. Even at those times when he would reappear at one of the many State placements from which he fled, the reappearance would be'only short-lived-'before he would once again leave. His final instance of running away occurred in February 1989, at which time, the State did not know of his whereabouts. As the State found that it had nothing more to offer the teenaged A.J., according to testimony heard at trial, the Office of Community Services asked the court to release A.J. from their custody and such a release was provided in March 1989. This trial testimony also indicated, however, that despite this release, A.J. could have, in the future, requested the help of the State.
Under the above-described factual background, we conclude that the trial court erred in finding that the State owed a duty in this instance. Whether by operation of the court-ordered release or by his extended status as a runaway, A.J. was apparently not in the custody of the State. Therefore, the State cannot be expected to have exercised any type of supervision over a person whom it did not have in its custody. We further observe that, as a practical matter, it would obviously have been virtually impossible to do so.
| ^Furthermore, any duty arguably owed in this matter would have been a duty owed to A.J. Our review of the jurisprudence reveals no duty owed by the State to generally protect the public from the actions of a runaway child who has previously been in its custody. Additionally, there is no indication that the State had any knowledge that could have given rise to a special duty, as the State apparently had no specific knowledge that A.J. might drive recklessly. Rather, the State only had knowledge that A. J. had general, although serious, behavioral problems. Nothing about the quality of this knowledge, appears to give rise to a duty owed to the plaintiffs who, although, friends and acquaintances of A.J., are .owed no greater duty here than any that might be.owed to the general public. To find the existence of a duty in this matter would make the State a comprehensive insurer for all of the bad acts of runaways formerly in their control and custody. We find no such overwhelming duty.
Even if we were to find that the State had, in spme way, owed a duty in the instant matter, a final issue remains which would preclude recovery. La.R.S. 9:2798.1 provides that:
B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.
C. The provisions of Subsection B of this Section are not applicable:
(1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policy-making or discretionary power exists; or . 113(2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willfulj outrageous, reckless, or flagrant misconduct.
As previously quoted, the trial judge found that Subsection C of La.R.S. 9:2798.1 is applicable to the instant matter thereby prohibiting discretionary immunity. The trial judge, however, did not state which aspect of Subsection C he found under the present *530 factual scenario. Our review of the record indicates that, even if we were to conclude that liability existed, neither of the provisions of La.R.S. 9:2798.1(0) would be satisfied. Therefore, as asserted by the State, discretionary immunity would prohibit imposition of liability.
DECREE
For the foregoing reasons, the decision of the trial court is reversed as it relates to the appellants. Judgment is, therefore, rendered in favor of the defendants, the State of Louisiana through the Department of Health and Hospitals, Office of Community Services, Department of Social Services and/or Division of Children, Youth, arid Family Services and Carol Sorich, dismissing Plaintiffs’ demands against the said defendants/at Plaintiffs’ costs. Costs of this appeal are assigned to the plaintiffs, Conrad Moran and Becky Daigle.
REVERSED AND RENDERED.
THIBODEAUX, J., concurs and assigns' written reasons.
COOKS, J., dissents.

. The record reveals that A.J. Oubre died prior to trial, but that his death was unrelated to the accident now at issue.

. Liberty Lloyds Insurance Company, Bertrand's insurer, was declared insolvent prior to trial. Therefore, Louisiana Insurance Guaranty Association (LIGA) assumed Liberty Lloyds' outstanding liabilities and represented Bertrand in this matter.

. Although the trial transcript indicates that an oral motion to dismiss Ms. Sorich as a defendant was made by the'plaintiffs at the beginning of the trial held in this matter, the final written judgment cast judgment against her along with the remainder of the defendants. Therefore, in reversing the judgment, we include consideration of that imposed against Ms. Sorich in our decision.

.We note.that neither.Blaine Bertrand nor LIGA appeal the decision of the trial court.

. As the Slate's remaining assignments all deal with the negligence theory of liability, these will be addressed together.

. Art. 2315. Liability for acts causing damages
Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
Damages may include loss of consortium, service, and society, and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person.

. Although apparently considered by the trial court, the plaintiffs did not allege liability pursuant to a strict liability theory of recovery. La. Civ.Code art. 2317 provides as follows:
Art. 2317. Acts of others and of things in custody
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.

. La.Civ.Code art. 2318 provides:
Art. 2318. Acts of minors
The father and the mother and, after the decease of either, the surviving parent, are responsible for the damage occasioned by their minor or unemancipated children, residing with them, or placed by them under the care of other persons, reserving to them recourse against those persons.
The same responsibility attaches to the tutors of minors.
See Opelousas Scrap Materials, Inc. v. Louisiana, Div. Of Evaluation and Servs., 525 So.2d 1144, 1146-47 (La.App. 3 Cir.1988), wherein this court reasoned as follows:
Liability pursuant to article 2318 extends only to "fathers” "mothers”, and "tutors" and then only for the acts of "their” minor or unemanci-pated children residing with them or placed by them in the care of another. We do not believe that the State, even though it had "legal custody” of the minors, or Beadle, who was the "foster” parent and possessed physical custody, may be held strictly liable.

.The State asserted that, in the event liability was found, said liability could not be imposed pursuant to La.R.S. 9:2798.1 as the actions taken were discretionary.